UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

James Lambright,                        Case No. 3:21-cv-865

         Plaintiff,

     v.                                      MEMORANDUM OPINION
                                                      AND ORDER

New Age Dome Construction, LLC, *et al.*,

         Defendants.

## I.     INTRODUCTION

In May 2019, James Lambright contracted with New Age Dome Construction, LLC, an Alabama-based company, to perform repair and remodeling work on the roof of the geodesic dome house Lambright and his wife own in New London, Ohio. Lambright contends that, when New Age finally performed the work in August 2020, the work was done poorly, and the roof leaked as a result. He filed suit against New Age; John Johnson, New Age's sole member; and Daniel Johnson, John's son and an independent contractor who performed work for New Age. (Doc. No. 1). Briefing is now complete on the parties' cross-motions for summary judgment. For the reasons stated below, I grant the motions in part and deny them in part.

## II.     BACKGROUND

Lambright began building a geodesic dome residence in 1999.[1] (Doc. No. 48-1 at 14). Lambright purchased a kit from a company called Natural Spaces Domes and largely built the structure himself over a one-year period. (*Id.* at 14, 19-21). He first noticed a leak in the roof in

---

[1] Geodesic domes are constructed from triangular-shaped panels, which are conjoined to form a sphere. (*See* Doc. No. 48-1 at 13-14).

2017 or 2018. (*Id.* at 23). Lambright contacted local roofing companies but, in his words, "nobody wants to touch a dome." (*Id.* at 25).

By May of 2018, Lambright had come across New Age's website and learned New Age performed re-roofing work on geodesic domes. (*Id.* at 54-55, 83). Lambright communicated with John Johnson by email for a few weeks before agreeing to proceed with the project. (*Id.* at 83-86). For reasons that are not clear from the record, Lambright did not enter into an agreement for the repair work until May 2019. (Doc. No. 1-1). The contract Lambright and New Age eventually entered called for Lambright to pay "$5,000 as retainer to New Age Construction for engineering and planning services," "in consideration of" which New Age "agree[d] to provide the following:"

> 1. An initial set of working drawings to be developed between the parties for cupola, dormer[,] and window design or modifications.
>
> 2. Engineering, drafted[,] and required stamped drawings for permits.
>
> 3. Additional drawings, specifications[,] or advice required to assist subcontractors working on the building, remodeling, or re-roofing of the geodesic dome located . . . [in] New London, Ohio.
>
> 4. [New Age] also acts as the on-site authorized deputy for the engineer to alter or modify field repairs or actions, including required photos or documentation for engineer, homeowner's insurance[,] or local inspector.

(*Id.* at 1).

The contract describes "[f]ield services rates" – including travel and site time rates for John, travel time and labor rates for the roofing crew, hourly rates for the field crew – and assigns to Lambright the responsibility to pay for materials and worker lodging. (*Id.*). New Age agreed to remedy "workmanship-related leaks in the roofing system or any defects in the repair work performed." (*Id.* at 2). New Age warranted its work, with limited exceptions, for a period of one year following completion of the final roofing inspection and final payment. (*Id.*). Lambright signed the contract on May 22, 2019, and he paid the $5,000 retainer on June 10, 2019. (Doc. No. 48-1 at 132-34).

2

For reasons that again are unclear, New Age did not begin work on Lambright's roof until August 10, 2020.[2] (Doc. No. 50-1 at 174). Daniel Johnson, along with his crew members, performed the work on behalf of New Age. (*Id.* at 25). New Age completed work on August 27, 2020. (*Id.* at 69). As working was nearing completion that day, the relationship between the parties deteriorated sharply. According to Daniel, Lambright asked Daniel what New Age was going to do with the skylights on the house, and Daniel told him "[n]othing," because the skylights were not included in the scope of work. (*Id.* at 77-78, 102). Lambright then allegedly made a physical threat against Daniel, leading to Daniel contacting the local sheriff's department. (*Id.* at 46-48).

Lambright denies he ever threatened Daniel. (Doc. No. 48-1 at 102). Lambright's wife, Beth, asserted Daniel called the police because Lambright would not pay the final balance and that Daniel fabricated the alleged threat as leverage to force the Lambrights to pay the final invoice. (Doc. No. 53-3 at 1); (*see also* Doc. No. 48-1 at 100-03).

Lambright contends that, despite making final payment to New Age, the work was not done properly. Beth Lambright emailed Daniel just two days later and stated "[w]e had a good rain on Friday and I hate to tell you[,] but the garage leaks like crazy!" (Doc. No. 50-1 at 108). She also reported rainwater was "pouring" into the bedroom from a leak around one of the skylights. (*Id.*). The Lambrights, John, and Daniel exchanged emails about the leaks over the next few months. (*See, e.g.,* Doc. No. 48-1 at 107-08; Doc. No. 50-1 at 57-58). Daniel contends he returned to New London, but the Lambrights did not respond to his email indicating he was available to come back

---

[2] New Age contends the delay in performance was because "things change[d] and ground to a proverbial halt during the early COVID-era, which is when the existing agreement was entered into," and it also argues the Covid-19 pandemic is the reason why the contract did not contain an estimated completion date. (Doc. No. 45 at 5). I do not find this assertion credible, as the first case of Covid-19 in the United States was not identified until January 20, 2020, in the State of Washington, and large-scale lockdowns did not occur until March 2020. *See* https://www.cdc.gov/museum/timeline/covid19.html (last accessed January 31, 2025). But the explanation for the approximately 15-month delay is not material to the resolution of the parties' motion, so I need not formally resolve this issue.

3

to the property. (Doc. No. 50-1 at 58). There is no dispute that New Age did not return to the property to perform any repairs.

Within the next few weeks, Lambright contacted John Feick, a registered architect and president of Feick Design Group, Inc., to perform a site inspection and review of the roof replacement work. (Doc. No. 48-1 at 67-68; Doc. No. 52-2 at 2). Feick performed a field inspection on October 20, 2020. (Doc. No. 52-2 at 2). Feick identified a number of problems with the installation of the shingles, including apparently improper use of sealants. (*Id.* at 3-4). In Feick's view, New Age "[d]id not use reasonable care in re-roofing [the] residence," and he concluded "this lack of reasonable care . . . was the proximate cause of the roof leaks." (*Id.* at 4).

Lambright filed suit against New Age, John Johnson, and Daniel Johnson on April 26, 2021. He asserts six claims under Ohio law: (1) breach of contract (New Age); (2) negligence (all Defendants); (3) fraud (all Defendants); (4) violation of the Ohio Home Solicitation Sales Act (all Defendants); (5) violation of the Ohio Consumer Sales Practices Act (all Defendants); and (6) violation of the Ohio Home Construction Service Supplier Act (New Age and Daniel Johnson). (Doc. No. 1 at 12-20). Each of the Defendants moved for summary judgment on all claims. (Doc. Nos. 45, 46, and 47). Lambright moved for summary judgment on Count 5. (Doc. No. 49).

### III. STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the [record] . . . ,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25.

4

Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. Gen. Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). But "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter.'" *Wiley v. United States*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249). Therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071.

The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, I must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that

5

one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

## IV. ANALYSIS

As I noted above, Defendants moved for summary judgment on all claims against them. Lambright stipulates to the dismissal of: (1) his fraud claim in Count 3 against Daniel Johnson; (2) Count 4 against all Defendants; and (3) Count 6 against New Age and Daniel Johnson. (Doc. No. 52 at 1-2). Therefore, I enter summary judgment in favor of those Defendants as to those counts.

## I. BREACH OF CONTRACT

New Age first seeks summary judgment on Lambright's breach of contract claim. (Doc. No. 45 at 4-7). In diversity cases such as this one, federal courts apply the substantive law of the state in which they sit.[3] *See, e.g., Maldonado v. Nat'l Acme Co.*, 73 F.3d 642, 644 (6th Cir. 1996) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938)). A breach of contract claim brought under Ohio law requires the plaintiff to prove "(1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages or loss resulting from the breach." *Claris, Ltd. v. Hotel Dev. Servs., LLC*, 104 N.E.3d 1076, 1083 (Ohio Ct. App. 2018) (citations omitted).

There is no dispute regarding the first two elements – Lambright signed a contract with New Age for repairs to his roof and Lambright paid New Age in full. (*See* Doc. No. 45 at 4; Doc. No. 52 at 6-7).

New Age claims there also is no dispute as to the third element, stating "[i]t is also undisputed that Defendant New Age . . . fulfilled all of its contractual obligations" under the parties' agreement. (Doc. No. 45 at 4). But New Age does not cite to any portion of the record in support of this contention. *Cf. Celotex*, 477 U.S. at 323 (noting the moving party must inform the court of

---

[3] When stating the elements of a breach of contract claim, New Age offered citations to several Missouri state court cases. (*See* Doc. No. 45 at 4). New Age does not explain why it cited those cases, and nothing in those opinions affects the outcome of New Age's motion.

the basis for its motion and "identify[] those portions of the [record] . . . which it believes demonstrate the absence of a genuine issue of material fact") (internal quotation marks omitted).

Further, the record demonstrates Lambright has disputed this element. Two days after New Age's crew left the job site, Beth Lambright emailed Daniel to report the roof was leaking. (*See* Doc. No. 50-1 at 108). And Feick, Lambright's expert witness, places the blame for the numerous roof leaks squarely on what he described as New Age's failure to use reasonable care in performing its contractual duties in re-roofing the residence.[4] (Doc. No. 52-2 at 4). This alleged breach also damaged Lambright, as the entire roof must be removed and replaced. (*Id.*).

Thus, the record establishes there is at least a genuine dispute of material fact as to whether New Age breached the contract. Therefore, I deny New Age's motion for summary judgment on Count 1.

## II.  NEGLIGENCE

Defendants next move for summary judgment on Lambright's negligence claim. Lambright alleged in the Complaint that New Age owed him a duty "to perform its work in a good and workmanlike manner," and that all Defendants owed him a duty to reasonably supervise the work performed. (Doc. No. 1 at 12-13).

Defendants are entitled to summary judgment on this claim. To the extent Lambright argues Defendants were negligent in failing to perform the repairs in a workmanlike manner, (*see* Doc. No. 53 at 16), he raises a claim for breach of contract, not for negligence. *See, e.g., State Farm Fire & Cas. Co. v. Cap. Roofing, LLC*, 152 N.E.3d 460, 480 (Ohio Ct. App. 2020) (noting that, under

---

[4] New Age's claim that Feick "failed to identify any leaks," (Doc. No. 45 at 5), is misleading at best. Lambright testified that the roof leaks in several places and that he has had to place tarps on the roof to try to prevent water from getting inside the house. (Doc. No. 48-1 at 77, 90, 111). And Feick identified several different issues with the roof repair that could be the source of the leaks. (Doc. No. 52-2 at 3-4). The fact that Feick did not conclude which of the numerous construction errors caused the leaks does not entitle New Age to summary judgment.

Ohio law, the failure to perform repairs in a workmanlike manner "may constitute a breach of contract") (citation omitted).

A plaintiff may bring a "tort claim based upon the same actions as those upon which a claim of contract . . . only if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed." *ITS Fin., LLC v. Advent Fin. Servs., LLC*, 823 F. Supp. 2d 772, 780 (S.D. Ohio 2011) (citation and quotation marks omitted). Lambright has not identified any duty Defendants would have owed him in the absence of the parties' contract. Therefore, Defendants are entitled to summary judgment on Lambright's negligence claim.

## III.     FRAUD

New Age and John Johnson seek summary judgment on Lambright's fraud claims against them. Lambright alleges these Defendants falsely represented that John Johnson could provide engineering services in connection with the repair of Lambright's roof. (Doc. No. 1 at 13-14).

A plaintiff bringing a fraudulent inducement claim under Ohio law must show: "'(1) an actual or implied false representation concerning a fact or, where there is a duty to disclose, concealment of a fact, material to the transaction; (2) knowledge of the falsity of the representation or such recklessness or utter disregard for its truthfulness that knowledge may be inferred; (3) intent to induce reliance on the representation; (4) justifiable reliance; and (5) injury proximately caused by the reliance.'" *Info. Leasing Corp. v. Chambers*, 789 N.E.2d 1155, 1174 (Ohio Ct. App. 2003) (quoting *Yo–Can, Inc. v. The Yogurt Exchange, Inc.*, 778 N.E.2d 80, 89 (Ohio Ct. App. 2002)).

Defendants are entitled to summary judgment because Lambright fails to point to any evidence in the record that he relied on the alleged false statements. He states merely that he "paid money based only on the promised services," which I presume refers to the engineering services referred in the parties' contract. (Doc. No. 52 at 18; Doc. No. 53 at 17). These statements in Lambright's briefing do not satisfy his burden to "set forth specific facts showing that there is a

8

genuine issue for trial." *Anderson*, 477 U.S. at 250 (citation and quotation marks omitted). Therefore, I grant Defendants' motion for summary judgment on Count 3.

### IV. CONSUMER SALES PRACTICES ACT

The Ohio Consumer Sales Practices Act (the "CSPA") "prohibits unfair or deceptive acts and unconscionable acts or practices by suppliers in consumer transactions." *Einhorn v. Ford Motor Co.*, 548 N.E.2d 933, 935 (Ohio 1990) (citing Ohio Rev. Code §§ 1345.02 and 1345.03). A "consumer transaction" is "a sale . . . or other transfer of an item of goods [or] a service . . . to an individual for purposes that are primarily personal, family, or household . . . ." Ohio Rev. Code § 1345.01(A). A "supplier" is "a seller . . . or other person engaged in the business of effecting or soliciting consumer transactions . . . ." *Id.* §1345.01(C). Construction contracts for repairs or remodeling at existing residential properties are within the reach of the CSPA. *See A1 Heating & Cooling, Inc. v. Thomas*, 2024-Ohio-109, 2024 WL 157882, at *8 (Ohio Ct. App. Jan. 12, 2024) (citing *Est. of Tomlinson v. Mega Pool Warehouse, Inc.*, 206 N.E.3d 853, 859 (Ohio Ct. App. 2023) (*rev'd on other grounds by Est. of Tomlinson v. Mega Pool Warehouse, Inc.*, 237 N.E.3d 212 (Ohio 2024), and *Beder v. Cerha Kitchen & Bath Design Studio, LLC*, 2022-Ohio-4463, 2022 WL 17578912 (Ohio Ct. App. Dec. 12, 2022)).

Section 1345.02(B) contains a nonexclusive list of ten unfair or deceptive trade practices made unlawful under § 1345.02(A). Ohio Rev. Code § 1345.02. Further, Ohio "administrative rules were adopted to aid in interpreting [§] 1345.02(A)." *Motzer Dodge Jeep Eagle, Inc. v. Ohio Atty. Gen.*, 642 N.E.2d 20, 25 (Ohio Ct. App. 1994).

#### 1. Defendants' motions

Each of the Defendants moved for summary judgment on Lambright's CSPA claim. First, New Age contends that, "[u]nder the previous analysis, [there] exists no violation of [the] CSPA as alleged within the complaint, nor established by testimony during any deposition, and as Plaintiff

9

cannot, under any set of circumstances, factually prove his case in a manner violative of the CSPA." (Doc. No. 45 at 11).  The "previous analysis" to which New Age apparently refers is a discussion of two other Ohio statutes, the Home Solicitation Sales Act and the Home Construction Service Suppliers Act.  (*See id.* at 8-11).

But that analysis does not help New Age here, as those are different laws, with different purposes and different requirements.  *See, e.g., Hanamura-Valashinas v. Transitions by Firenza, LLC*, 160 N.E.3d 359, 370 (Ohio Ct. App. 2020) ("There are substantive differences between the Home Construction Service Suppliers Act and the Consumer Sales Practices Act.").  New Age identifies no legal basis to equate its arguments regarding those laws to Lambright's CSPA claim.  Moreover, New Age's conclusory argument that there are no facts to support Lambright's claim does not satisfy its responsibility to identify specific portions of the record to demonstrate the absence of a genuine dispute of material fact.  *Celotex*, 477 U.S. at 323.  Therefore, I deny New Age's motion.

Next is Daniel Johnson, who repeats New Age's "previous analysis" and conclusory no-evidence arguments.  (Doc. No. 47 at 10).  These arguments fail for the same reason as New Age's arguments.  But Daniel also argues he cannot be held personally liable for any CSPA violations because his only involvement with New Age is as a subcontractor.  (*Id.* at 4-5).  Under Ohio law, "[i]n order to hold a corporate officer personally liable for his actions in violation of the CSPA, the evidence must show that the officer participated in the commission of an act or specifically directed the particular act to be done."  *Yates v. Mason Master, Inc.*, 2002-Ohio-6697, 2002 WL 31744694, at *5 (Ohio Ct. App. Dec. 6, 2022); *see also Luckoski v. Allstate Ins. Co.*, 5 N.E.3d 73, 85 (Ohio Ct. App. 2013) (noting courts need not conduct a corporate-veil piercing analysis because the CSPA imposes personal liability on corporate officers for their personal acts in violation of the CSPA).

10

There is no evidence that Daniel held any corporate office with New Age and, therefore, he may not be held personally liable for any CSPA violations. Daniel's conduct, to the extent it may have violated the CSPA, occurred in the context of his work performed on behalf of New Age and thus is attributable to New Age. I grant Daniel's motion for summary judgment on this claim.

Finally, John Johnson contends that, if I find "John E. Johnson may be personally liable, John E. Johnson submits that summary judgment in his favor [on the CSPA claim] would also be appropriate because Plaintiff has not proven fraud." (Doc. No. 46 at 10). John Johnson does not explain what one of these has to do with the other, and I conclude he is not entitled to summary judgment on this basis. He also repeats New Age's conclusory argument about the alleged lack of evidence to support Lambright's claim. This argument fails for the same reason.

John Johnson also argues that he may not be held personally liable but, as I noted above, corporate officers may be held liable for their participation in an act that violates the CSPA. *See Yates*, 2002 WL 31744694, at *5. And Lambright has identified at least two violations in which John participated: (1) the failure to provide a "dated written receipt" containing certain required information after Lambright made the initial $5,000 deposit, in violation of Ohio Administrative Code § 109:4-3-07(B); and, (2) the failure to provide Lambright with the option of obtaining a refund of his initial deposit before eight weeks passed between receipt of the deposit and the provision of services, in violation of Ohio Administrative Code § 109:4-3-09(A)(2). Therefore, I deny John Johnson's motion for summary judgment on this claim.

### 2. Lambright's motion

Lambright also moves for summary judgment, arguing there is no genuine dispute of material fact that New Age, John Johnson, or both, violated the CSPA on at least six separate

11

occasions.[5] (Doc. No. 49 at 8-11). Lambright identifies three different requirements with which Defendants failed to comply. He also contends he is entitled to damages as a result.

        a. **Ohio Administrative Code § 109:4-3-09**

Lambright argues New Age and John Johnson violated the CSPA "by failing to . . . (1) provide the promised drawing and engineering services, (2) provide a refund, or (3) provide services of equal or greater value, within eight weeks of the date they received the $5,000 deposit." (Doc. No. 49 at 11).

Under Ohio law, a supplier commits a deceptive trade practice if it accepts "money from a consumer for . . . services . . . and then permit[s] eight weeks to elapse without" performing the services, making or offering a full refund, or providing services of greater or equal value. Ohio Admin. Code § 109:4-3-09(A); *see also Knoth v. Prime Time Mktg. Mgmt., Inc.*, 2006-Ohio-5763, 2006 WL 3114273 (Ohio Ct. App. Oct. 27, 2006) (holding failure to provide an estimate compliant with § 109:4-3-09(A) was a violation of the CSPA).

New Age and John argue generally that "they did not, in any way, violate the CSPA." (Doc. No. 51 at 2). But Lambright contends he never received notice he could obtain a refund and New Age and John Johnson have not identified any evidence in the record to show they complied with this requirement of Ohio law. Therefore, I conclude Lambright has established he is entitled to summary judgment with respect to this violation of the CSPA.

---

[5] Lambright seeks summary judgment "on no fewer than seven violations of the CSPA, and likely more." (Doc. No. 49 at 8). But one of those alleged violations arises from Daniel Johnson's failure to provide an estimate for the work to be performed. (*Id.* at 10). I concluded Daniel may not be held personally liable and therefore Lambright cannot prove Daniel violated the CSPA.

### b. Ohio Administrative Code § 109:4-3-05

Lambright also contends New Age and John Johnson violated the CSPA when they failed to provide him with notice that he was entitled to receive a written or oral estimate of the cost of the services. (Doc. No. 49 at 10-11).

Ohio law requires suppliers to provide consumers "with a form which indicates:

the date, the identity of the supplier, the consumer's name and telephone number, the reasonably anticipated completion date and, if requested by the consumer, the anticipated cost of the repair or service. The form shall also clearly and conspicuously contain the following disclosures in substantially the following language:

> 'Estimate
> You have the right to an estimate if the expected cost of repairs or services will be more than twenty-five dollars. Initial your choice:
> \_\_\_\_\_ written estimate
> \_\_\_\_\_ oral estimate
> \_\_\_\_\_ no estimate.'"

Ohio Admin. Code 109:4-3-05(A)(1). Failure to provide this form or to notify the consumer that the consumer is entitled to receive an estimate is a deceptive trade practice. *See, e.g., Griffin Contracting and Restoration v. McIntyre*, 107 N.E.3d 22, 32-33 (Ohio Ct. App. 2018).

Lambright asserts, and Daniel Johnson acknowledged, that Lambright did not receive a written estimate when Daniel and his crew arrived at Lambright's house to begin the work. (*See* Doc. No. 50-1 at 171). New Age and John Johnson are liable for this violation of § 109:4-3-05(A) because Daniel operated as New Age's agent, at John's instruction. (*Id.* at 25-27). Thus, I conclude Lambright is entitled to summary judgment as to this CSPA violation as well.

### c. Ohio Administrative Code § 109:4-3-07

Finally, Lambright argues that New Age, John Johnson, or both, violated the CSPA on four occasions when they failed to provide him with a written receipt for each of the four installment payments he made. (Doc. No. 49 at 9-10).

13

Before accepting an initial deposit from a consumer, a supplier must provide the consumer with "a dated written receipt stating clearly and conspicuously the following information:

> (1) Description of the goods and/or services to which the deposit applies. . .;
> (2) The cash selling price and the amount of the deposit. . . .;
> (3) Allowance on the goods to be traded in or other discount, if any;
> (4) Time during which any option given is binding;
> (5) Whether the deposit is refundable and under what conditions . . . ; and
> (6) Any additional costs such as storage, assembly[,] or delivery charges."

Ohio Admin. Code § 109:4-3-07(B). The supplier also must provide "[a] written receipt stating the date and amount paid . . . for each and every subsequent deposit made, which receipt shall also state the remaining amount due." Ohio Admin. Code § 109:4-3-07(C); *see also Ottney v. Al Sobb's Auto & Truck Frame Serv., Inc.*, 112 N.E.3d 927, 934 (Ohio Ct. App. 2018) (holding auto repair shop committed a deceptive trade practice when it failed to provide a deposit receipt).

Lambright made four separate payments in connection with his roof repair: (1) an initial $5,000 deposit to New Age on June 10, 2019; (2) a payment of $15,972.50 to Daniel Johnson by wire transfer on August 10, 2020; (3) a payment of $8,000 in cash to Daniel on August 27, 2020; and (4) a $14,603.38 wire transfer to Daniel on August 27, 2020. (Doc. No. 48-1 at 134-39). New Age and Johnson, whether acting on their own behalf or through Daniel, did not provide Lambright with a written receipt containing the information required by § 109:4-3-07 for any of those payments. Therefore, I conclude Lambright is entitled to summary judgment in his favor as to each of these four violations of the CSPA.

    **d.**  **Damages**

Lambright seeks damages in the amount of $130,727.64 for the six CSPA violations. (Doc. No. 49 at 11-12). Defendants contend Lambright has not established he is entitled to this amount as a matter of law. (Doc. No. 51 at 2-6). I agree and deny Lambright's motion on this basis.

When a supplier violates the CSPA, § 1345.09 permits a consumer to "rescind the transaction or recover . . . three times the amount of the consumer's actual economic damages or

14

two hundred dollars, whichever is greater . . . ." Ohio Rev. Code § 1345.09(B). A consumer's "actual economic damages" are "damages for direct, incidental, or consequential pecuniary losses resulting from a violation of Chapter 1345 of the Revised Code . . . ." Ohio Rev. Code § 1345.09(G). *See also Whitaker v. M.T. Auto., Inc.,* 855 N.E.2d 825, 831 (Ohio 2006) ("Actual damages are defined as real, substantial, and just damages, or the amount awarded to a complainant in compensation for his actual and real loss or injury.") (citations and internal quotation marks omitted).

Lambright has not demonstrated the amount of his actual damages from New Age and John Johnson's violations of the CSPA. He arrives at his requested damages by totaling the money he paid for his roof repair and tripling that amount. (Doc. No. 49 at 11-12). But "[a]ctual damages do not equate to the contract price, especially where the seller has fully performed, albeit unsatisfactorily." *Garber v. STS Concrete Co.*, 991 N.E.2d 1225, 1232 (Ohio Ct. App. 2013). I conclude he has not met his burden to show the absence of a genuine dispute of material fact as to the amount of actual damages he suffered as the result of the CSPA violations.

### V. CONCLUSION

For the reasons stated above, I grant Defendant New Age Dome Construction, LLC's motion for summary judgment as to Counts 2, 3, 4, and 6, and deny the motion as to Counts 1 and 5. (Doc. No. 45). I grant Defendant John Johnson's motion for summary judgment as to Counts 2, 3, and 4, and deny the motion as to Count 5. (Doc. No. 46). And I grant Defendant Daniel Johnson's motion for summary judgment on all Counts alleged against him. (Doc. No. 47).

Finally, I grant Plaintiff James Lambright's motion for summary judgment in part and deny it in part.  I grant Lambright's motion for summary judgment as to Count 5 regarding the six identified violations of the Consumer Sales Protection Act, but I deny the motion as to Lambright's request for damages.  (Doc. No. 49).


So Ordered.


        s/ Jeffrey J. Helmick
        United States District Judge